UNITED STATES DISTRICT COURT

Northern District of California

GUILLERMO LAMAS and MARIA SOTO,

           Plaintiffs,

   v.

LITTON LOAN SERVICING,

           Defendant.

_____/

No. C 10-05099 MEJ

**ORDER REMANDING CASE**

## I. INTRODUCTION

Pending before the Court is Defendant Litton Loan Servicing's Motion to Dismiss Plaintiffs Guillermo Llamas and Maria Soto's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. #4.)[1] Plaintiffs have filed an Opposition to Defendant's Motion, wherein they move to remand this action to state court for lack of diversity jurisdiction. (Dkt. #12.) The Court finds that the motions are suitable for determination without oral argument, and therefore **VACATES** the hearing set for February 24, 2011. *See* Civil L. R. 7-1(b). For the reasons that follow, the Court **GRANTS** Plaintiffs' Motion to Remand and declines to address Defendant's Motion to Dismiss.

## II. BACKGROUND

On August 19, 2010, Plaintiffs filed this lawsuit against Defendant in Napa County Superior Court. (Compl., Dkt. #1, Ex. A.) The relevant facts and allegations, taken from Plaintiffs' Complaint and Defendant's Request for Judicial Notice ("RJN") (Dkt. #5), are as follows.

On May 25, 2006, Plaintiffs executed a mortgage loan for $459,000 secured by the property located at 2450 Pacific Street, Napa, California. (*See* Deed of trust, Ex. A to RJN, Dkt. #5-1.) Defendant is the servicer for Plaintiffs' loan. (Compl. ¶ 5.) Beginning in May 2009, Plaintiffs were

---

[1] This case was initially assigned to Chief Magistrate Judge Maria-Elena James. On January 19, 2011, the parties were informed that Judge James was unavailable to conduct hearings in this matter until April 2011, but, in her absence, Magistrate Judge Timothy J Bommer was available to preside over matters in this case. (Dkt. #11.) On February 1, 2011, the parties filed a joint statement consenting to Judge Bommer presiding over the case in Judge James' absence. (Dkt. #13.)

unable to make their monthly loan payments. (Ex. B to RJN, Dkt. #5-2 at 2.) As a result, on August 7, 2009, The Wolf Firm filed a Notice of Default and Election to Sell Under Deed of Trust in the Napa County Recorder's Office, indicating Plaintiffs were $16,296.92 in default. (Ex. B to RJN, Dkt. #5-2 at 1.) Subsequently, on November 10, 2009, The Wolf Firm recorded a Notice of Trustee's Sale, indicating that the property would be sold at public auction on November 30, 2009. (Ex. C to RJN, Dkt. #5-3.)

Plaintiffs allege that prior to the Trustee's Sale date, in October 2009, they and Defendant commenced a Trial Period Plan ("TPP") under the Home Affordable Modification Program ("HAMP").[2] Plaintiffs allege that under the TPP, Defendant agreed to modify Plaintiffs' loan if Plaintiffs satisfied the conditions and duties set forth in the TPP, including making three payments of $1,395.03. (Compl. ¶¶ 6-8.) Plaintiffs assert that they fully complied with the TPP requirements, but Defendant breached their agreement by refusing to permanently modify their loan. (Compl. ¶¶ 8, 15.) As a result, Plaintiffs allege that they suffered financial damages, forewent other potential remedies, and face foreclosure. Based on these allegations, they are asserting claims against Defendant for: (1) breach of contract; (2) violation of the duties of good faith and fair dealing; (3) promissory estoppel; (4) unfair business practice pursuant to California Business & Professions Code § 17200 *et seq.*; and (5) fraudulent business practice pursuant to § 17200. They seek compensatory damages, punitive damages, a declaratory judgment that Defendant is required to offer them a loan modification, and attorneys' fees and costs. (Compl. at 7-8.)

On November 10, 2010, Defendant removed this action from state court on the basis of diversity jurisdiction under 28 U.S.C. § 1332. (Notice of Removal, Dkt. #1.) Defendant now seeks dismissal of Plaintiffs' Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiffs have failed to state a legally viable claim. Plaintiffs, however, contend that the Court need not reach the merits of Defendant's motion because the Court lacks

---

[2] The Home Affordable Modification Program is a government program established pursuant to the Emergency Economic Stabilization Act of 2008 that includes loan modification and other foreclosure prevention services. *See Hoffman v. Bank of Am., N.A.*, 2010 WL 2635773, at * 1 (N.D. Cal. June 30, 2010).

2

subject matter jurisdiction over this case, making remand appropriate.  Because Plaintiffs raise a jurisdictional argument, the Court turns to it first.

### III. DISCUSSION

**A.     Motion to Remand**

     1.     Overview of the Parties' Positions

In their Opposition, Plaintiffs contend that this Court cannot reach Defendant's motion to dismiss because it lacks jurisdiction over this case. (Opp. at 4-5.)  Specifically, Plaintiffs argue that Defendant cannot demonstrate that the amount in controversy exceeds the $75,000 threshold necessary to establish diversity jurisdiction and support removal of the case.  Defendant, however, maintains that because the object of this litigation is Plaintiffs' home, which it avers is worth more than $75,000, and because Plaintiffs are seeking punitive damages, attorneys' fees, and costs, the amount in controversy requirement is satisfied.

     2.     Legal Standard

A defendant may remove a civil action from state court to federal district court so long as original jurisdiction would lie in the district court to which the case is removed.  28 U.S.C. § 1441(a).  Because there is a "strong presumption" against removal jurisdiction, the defendant removing the action bears the burden of establishing that removal is proper. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).  In its Notice of Removal, Defendant asserts that diversity jurisdiction exists to support its removal of this action to federal court. *See* Dkt. #1 at 1-2.  Pursuant to 28 U.S.C. § 1332(a), a district court may exercise diversity jurisdiction over a case when the parties are citizens of different states and the amount in controversy exceeds $75,000.  Here, it is undisputed that diversity of citizenship exists between Plaintiffs and Defendant.  Thus, the central question is whether the amount in controversy requirement is satisfied.

Plaintiffs' Complaint is silent as to the amount of damages they are seeking for their claims. The Ninth Circuit has held that, "in cases where a plaintiff's state court complaint does not specify a particular amount of damages, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds [$75,000].  Under this

3

burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount." *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996); *see also Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003). To determine whether a defendant has made this showing, a court may consider facts in the removal petition, as well as any "summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Matheson*, 319 F.3d at 1090 (citing *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). A defendant's conclusory allegations regarding the amount in controversy, however, are insufficient. *Id*. at 1090-91. If after considering the evidence the defendant has proffered, there is still some doubt as to whether the amount in controversy element is satisfied, the court should remand the case to state court. *Id*. at 1090. The Court therefore turns to the evidence Defendant has proffered.

3.   Analysis

In its Notice of Removal, Defendant alleges the following regarding the amount in controversy:

> 6. *Amount in Controversy*. In their complaint, plaintiffs seek a permanent loan modification of their mortgage loan, and to stop the foreclosure proceedings. *See* Complaint, ¶ 18, Prayer, paras. 1-2. Plaintiffs also seek punitive damages and attorneys' fees. *Id*., paras. 3-4. Considering these allegations and taking into account the fair market value of real property in California, it is facially apparent from plaintiffs' complaint that the amount in controversy in this action is well over $75,000.

(Dkt. #1 at 2.) Defendant elaborates on these allegations in its Reply. There, Defendant argues that Plaintiffs "seek to prevent the foreclosure of their almost half-a-million dollar property." (Reply at 3.) According to Defendant, "[i]f the Court mandates, as Plaintiffs seek, that their loan be modified, then the Property will not be foreclosed upon (assuming no other breaches of contract). If the Court does not, the foreclosure process will go forward, and the entire value of the Property will be at stake." (*Id*.) Additionally, Defendant submits that Plaintiffs are seeking actual and punitive damages and costs and attorneys' fees, which Defendant contends "could very well exceed $75,000."

Plaintiffs, however, assert that Defendant's have offered nothing more than conclusory

4

arguments regarding the amount in controversy. (Opp'n at 4; Sur-Reply, Dkt. #18 at 2.)  They contend that the basis of their Complaint is to enforce the TPP to obtain a loan modification, not to rescind the mortgage loan.  (Opp'n at 4.)  Plaintiffs also acknowledge that their Complaint seeks punitive damages, costs, and fees, although Plaintiffs proffer no estimate of these requests.  (*Id.*)  Beyond these statements, Plaintiffs do not offer any substantive discussion regarding why the recovery and relief they seek in this action falls below the jurisdictional threshold.  Nevertheless, the Court construes Plaintiffs' statements as representing that at this point, they are not seeking more than $75,000 in this lawsuit.

After carefully considering the foregoing arguments and thoroughly reviewing the evidence Defendant has submitted, the Court finds that Defendant has failed to meet its burden of establishing that the amount in controversy exceeds $75,000.

First, the core of Plaintiffs' claims against Defendant is that, having complied with the requirements of the TPP, they are entitled to a loan modification.  Although Plaintiffs are seeking damages stemming from Defendant's denial of the modification, Plaintiffs have not asserted a specific figure in their Complaint.  To the extent that Defendant relies on the loan modification Plaintiffs seek as meeting the $75,000 amount in controversy requirement, Defendant has not identified any facts regarding the terms of the modification or provided any case law holding that a HAMP loan modification satisfies the amount in controversy requirement.  Thus, the loan modification and any damages Plaintiffs sustained stemming from Defendant's denial of it do not provide a basis for this Court to conclude that the amount in controversy requirement has been satisfied.

Second, Defendant contends that the amount in controversy requirement is satisfied because, by seeking to procure a loan modification from Defendant, Plaintiffs are attempting to avoid foreclosure of their house, which Defendant contends is worth more than $75,000.  Defendant's argument, however, is misplaced.  Notably, although Defendant asserts that Plaintiffs are seeking to stop foreclosure of their property in this lawsuit, none of Defendant's citations to Plaintiffs' Complaint substantiate this assertion.  In its Notice of Removal, Defendant first cites to paragraph

5

18 of Plaintiffs' Complaint. (*See* Dkt. #1 at 2, ¶ 6.) Paragraph 18 provides:

> 18. Plaintiffs have been living in limbo without any assurances that their home will not be foreclosed, despite their compliance with HAMP requirements and their payments under HAMP and the one additional payment rendered in reliance that the loan modification is granted.

(Compl. at 3, ¶ 18.) Thus, while ¶ 18 mentions that Plaintiffs may face foreclosure as a result of Defendant's refusal to grant a loan modification, contrary to Defendant's characterization, nothing in ¶ 18 indicates that Plaintiffs are seeking to stop the foreclosure process in this lawsuit. Defendants also cite ¶¶ 1-2 of Plaintiffs' prayer for relief. (Dkt. #1 at 2, ¶ 6.) Reviewing this portion of Plaintiffs' Complaint, it states in its entirety:

> WHEREFORE, having set forth this action against Defendants, Plaintiffs pray for the following relief:
>
> That the acts and practices of Defendants complained herein to constitute a breach of contract and the covenant of good faith and fair dealing, as well as a declaration that they are required by the doctrine of promissory estoppel to offer permanent loan modification.
>
> That the Court issues an Order for Specific Performance of Defendants together with other relief required by law.
>
> That Plaintiffs be awarded actual and punitive damages according to proof;
>
> That Plaintiffs be awarded fees and costs according to proof;
>
> That this Court grant any other relief that may be just or equitable.

(Compl. at 7-8.) Again, none of the relief Plaintiffs seek is aimed at stopping the foreclosure proceedings. Thus, this case is distinguishable from *Delgado v. Bank of America Corp.*, 2009 WL 4163525 (E.D. Cal. Nov. 23, 2009), which Defendant cites in support of its argument. In that case, after the plaintiff failed to secure a loan modification from the lender, his house was sold in non-judicial foreclosure proceedings. *Id*. at *2. As a result, the plaintiff sued the lender, asserting various tort claims and seeking "damages, declaratory relief and injunctive relief, including an order setting aside the sale of the property." *Id*. In responding to the plaintiff's challenge that the amount in controversy requirement was not satisfied, the defendants argued that because the object of the plaintiff's requests for injunctive and declaratory relief was the house he sought to reclaim, the value

UNITED STATES DISTRICT COURT
For the Northern District of California

1  of the house could satisfy the amount in controversy requirement. *Id.* at *6. In the instant case, in
2  contrast, the object of the litigation is not Plaintiffs' house, but their entitlement to a loan
3  modification and/or damages stemming from Defendant's refusal to provide one. While Plaintiffs'
4  entitlement to such relief may ultimately affect their ability to avoid the foreclosure sale of their
5  home, at the point when Defendant removed this case, Plaintiffs home had not been sold and
6  Plaintiffs have not requested that the Court enjoin Defendant or any other entity from taking further
7  action in foreclosure. Thus, the Court rejects Defendant's argument that the value of Plaintiffs'
8  home can satisfy the amount in controversy requirement.

9  Third, Defendant argues that Plaintiffs' request for punitive damages and attorneys' fees is
10 sufficient to meet the amount in controversy requirement. (Reply at 4.) According to Defendant,
11 "[a]ttorney fee awards in mortgage foreclosure litigation are often substantial, as they are in other
12 types of consumer credit litigation, making it probably that, if successful, Plaintiffs will seek more
13 than $75,000 in fees if they prevail." (*Id.*) In support, Defendant cites *Grove v. Wells Fargo*
14 *Financial California, Inc.*, 606 F.3d 577, 578 (9th Cir. 2010). In that case, following the parties'
15 settlement of the plaintiff's Fair Credit Reporting Act claims on the eve of trial, the trial court
16 awarded the plaintiff $85,289.25 in attorneys' fees, but denied his request for awards of taxable and
17 non-taxable costs, which the plaintiff appealed. To the extent that Defendant relies on *Grove* as
18 evidence that attorneys' fees may exceed the jurisdictional threshold in cases involving consumer
19 credit claims, Defendant provides absolutely no discussion of how the instant case compares to
20 *Grove* in terms of the complexity of the litigation such that the Court could conclude that *Grove*
21 provides a fair measure of the amount of fees that would be expected to mount in this case. Thus,
22 Defendant's assertion that Plaintiff's request for fees, costs, and punitive damages would exceed
23 $75,000 amounts to nothing more than speculation.

24 Fourth, at least two district courts have addressed the amount in controversy requirement in
25 the context of similar cases where plaintiffs sought loans modifications pursuant to a HAMP TPP
26 and held that the amount in controversy requirement was not met. *See Moreno v. Select Portfolio*
27 *Servicing, Inc.*, 2010 WL 2525980, at *8-9 (E.D. Cal. June 23, 2010) (rejecting defendant's

28

7

1 argument that amount in controversy was satisfied because the plaintiff was seeking a modification
2 of a $448,000 loan and an injunction to enjoin any foreclosure sale of the property); *see also*
3 *Reed v. Chase Home Finance, LLC*, 2001 WL 321737, at *2-4 (S.D. Ala. Jan. 28, 2011) (holding
4 that defendant failed to show amount in controversy requirement was met by the plaintiff's demand
5 for damages stemming from denial of HAMP loan modification, request to enjoin foreclosure, or the
6 plaintiff's demand for punitive damages).

7 Taking the foregoing evidence and authorities into consideration, the Court finds that
8 Defendant has failed to meet its burden of establishing that the amount in controversy in this case
9 exceeds $75,000.  Plaintiffs have not alleged in their Complaint that they are seeking more than
10 $75,000 and maintain that, at this stage, they are uncertain as to the amount of their damages.  While
11 Defendant has argued that the value of Plaintiffs' house satisfies the amount in controversy
12 requirement, Plaintiffs are not seeking to enjoin foreclosure proceedings, so the property is not the
13 object of this lawsuit.  As to Plaintiffs' demands for punitive damages and attorneys' fees, there is
14 nothing in the record indicating that these awards would exceed the jurisdictional amount.  Thus,
15 Defendant has not demonstrated by a preponderance of the evidence that the amount in controversy
16 in this case exceeds $75,000.  Consequently, the Court lacks jurisdiction over this matter and must
17 remand the action to state court.  *See* 28 U.S.C. § 1447(c).

**B.     Motion to Dismiss**

Because the Court lacks jurisdiction over this case, it declines to address Defendant's
Motion.

### IV.  CONCLUSION

For the reasons set forth above, the Court **GRANTS** Plaintiffs' request to remand this matter to state court for lack of jurisdiction.  The Clerk of the Court is directed to **REMAND** this action to Napa County Superior Court.

**IT IS SO ORDERED.**

Dated: February 22, 2011



_____
Timothy J Bommer
United States Magistrate Judge

8